UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 2:13-CR-00042-1-JRG |
| | ) |
| CARLOS ALTIERY | ) |

## **MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Carlos Altiery's Renewed Motion for Compassionate Release [Doc. 155], the United States' Response in Opposition [Doc. 157], and Mr. Altiery's Reply [Doc. 159]. For the reasons herein, the Court will deny Mr. Altiery's motion.

### I. BACKGROUND

In 2013, Mr. Altiery pleaded guilty to two offenses: a conspiracy to distribute and possess with the intent to distribute oxycodone and a conspiracy to distribute and possess with the intent to distribute heroin, each in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 846. [Plea Agreement, Doc. 46, at 1; Minute Entry, Doc. 51]. At sentencing, he was a career offender under USSG § 4B1.1(b), [PSR, Doc. 64, ¶¶ 29, 36, 38], and his total offense level and criminal history category were 29 and VI, respectively. [Statement of Reasons at 1 (on file with the Court)]. His guidelines range was 151 to 188 months. [*Id.*]. The Court sentenced him to a below-guidelines sentence of 144 months' imprisonment. [J., Doc. 76, at 2]. According to the Bureau of Prisons, he is serving his term of imprisonment at USP Lee and is scheduled for release in May 2023.

The Federal Defender Services of Eastern Tennessee (FDS) now moves the Court to order Mr. Altiery's compassionate release under 18 U.S.C. § 3582(c)(1)(A). The United States opposes FDS's motion, contending that Mr. Altiery has not identified an extraordinary and compelling reason for his release and that his release would be inconsistent with 18 U.S.C.

§ 3553(a)'s factors. [United States' Resp. at 6–11]. Having carefully considered the parties' arguments, the Court is now prepared to rule on Mr. Altiery's motion.

## II. ANALYSIS

"[O]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (quoting *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). Although § 3582(c)(1)(A) begins with the declaration that "[t]he court may not modify a term of imprisonment once it has been imposed," Congress enacted the First Step Act, Pub. L. No. 115-319, 132 Stat. 5194 (2018), which amended § 3582(c)(1)(A) so that courts can consider motions for compassionate release once a defendant either exhausts his administrative remedies with the Bureau of Prisons or waits thirty days after submitting a request to the warden. Section § 3582(c)(1)(A) now states:

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>>
>>> (i) extraordinary and compelling reasons warrant such a reduction; or
>>>
>>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that

> the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). The United States waives the exhaustion requirement and concedes that the Court "may consider Altiery's motion in full." [United States' Resp. at 4 n.1].

Under § 3582(c)(1)(A), compassionate release is "discretionary, not mandatory," *United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020) (citation omitted), and the statute contains three substantive requirements that the Court must address in sequential order before it can grant compassionate release, *id.*; *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). First, the Court must determine that "extraordinary and compelling reasons warrant" a sentence reduction. *Ruffin*, 978 F.3d at 1004 (quoting § 3582(c)(1)(A)(i)). Second, the Court must determine that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* (quoting § 3582(c)(1)(A)). And third, the Court must consider any applicable factors under § 3553(a) "and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Jones*, 980 F.3d at 1108 (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

### A. The First Requirement: Extraordinary and Compelling Circumstances

When determining whether an inmate, in requesting compassionate release, has identified reasons that are extraordinary and compelling in nature, "courts have universally turned to USSG § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that may warrant a sentence reduction." *United States v. Coker*, No. 3:14-CR-085, 2020 WL 1877800, at *3 (E.D. Tenn. Apr. 15, 2020) (quotation omitted). Section 1B1.13 states:

Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1)(A) Extraordinary and compelling reasons warrant the reduction; or

(B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) The reduction is consistent with this policy statement.

USSG § 1B1.13(1)–(3).

Although § 1B1.13 does not define "extraordinary and compelling reasons," the guideline commentary's first application note lists four "circumstances" in which "extraordinary and compelling reasons" are present:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,
(II) suffering from a serious functional or cognitive impairment, or
(III) experiencing deteriorating physical or mental health because of the aging process,

4

> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
>> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>>
>> (C) Family Circumstances.—
>>> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>>> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>>
>> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

USSG § 1B1.13 cmt. n.1(A)–(D). In these provisions, "Application Note 1 identifies three specific extraordinary and compelling reasons (tied to the defendant's health, age, or family circumstances) and a fourth catchall," *Ruffin*, 978 F.3d at 1005 (citing *id.*), under which the Bureau of Prisons' director has license to grant release for "reason[s] other than" the three reasons in Application Note 1(A)–(C), USSG § 1B1.13 cmt. n.1(D).

But the First Step Act "allow[s] defendants," for the first time, "to file reduction-of-sentence motions when the Bureau refuse[s] to do so," *Ruffin*, 978 F.3d at 1004, and district courts, when considering these motions and determining whether extraordinary and compelling circumstances exist for an inmate's release, now have authority to consider "reason[s] other than" the three reasons in Application Note 1(A)–(C), *see Jones*, 980 F.3d at 1111 (stating that "the as-written catch-all provision," which "still refers to the Director of the BOP as the absolute arbiter of 'extraordinary and compelling,'" "contravenes Congress's motivation for reforming compassionate release in the First Step Act and ignores the Sentencing Commission's grounds

5

for augmenting § 1B1.13's application notes"); *compare Ruffin*, 978 F.3d at 1006, 1008 (declining to decide whether, "after the First Step Act, district courts may find additional extraordinary and compelling reasons other than those in [§ 1B1.13's] commentary (such as a once-in-a-century pandemic)," or whether, instead, "Application Note 1's reasons remain exclusive and that the note's catchall delegates to the Bureau of Prisons (not the courts) the task of identifying other reasons"), *with Jones*, 980 F.3d at 1101, 1109, 1111 ("We resolve a debate that we first teed up in *Ruffin*, holding that" district courts, "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act," have "full discretion to define 'extraordinary and compelling' without consulting the policy statement [in] § 1B1.13" (footnote omitted)).

The district courts' authority to eschew Application Note 1(A)–(C) comes from the Sixth Circuit's recent decision in *Jones*, in which the Sixth Circuit observed that the Sentencing Commission has not updated § 1B1.13 in response to the First Step Act and concluded that § 1B1.13, in its current form, therefore cannot serve as an applicable policy statement under § 3582(c)(1)(A). *Jones*, 980 F.3d at 1101, 1109; *compare* 18 U.S.C. § 3582(c)(1)(A) (stating that district courts must conclude that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission"), *with Jones*, 980 F.3d at 1101, 1109 (holding that § 1B1.13 is "not an 'applicable' policy statement in cases where incarcerated persons file their own motions in district court for compassionate release" because "the Commission has not updated § 1B1.13 since the First Step Act's passage in December 2018" (citation omitted)).

In deciding *Jones*, however, the Sixth Circuit did not appear altogether to forbid district courts from looking to § 1B1.13—that is, to the "three specific extraordinary and compelling reasons" in Application Note 1(A)–(C), *Ruffin*, 978 F.3d at 1005 (citing USSG § 1B1.13 cmt. n.1(A)–(D))—with an eye toward guidance, rather than with an eye toward deference. *See*

6

*Jones*, 980 F.3d at 1109, 1111 (stating that § 1B1.13 "does not *wholly* survive the First Step Act's promulgation" and expressing an intention of "preserving as much of § 1B1.13 that can be saved" (emphasis added)); *id.* at 1111 (recognizing that "federal judges *may* skip" an analysis under § 1B1.13 and have "full discretion" to choose whether "to define 'extraordinary and compelling' without consulting the policy statement [in] § 1B1.13" (emphasis added) (footnote omitted))); *see also United States v. Sherwood*, 986 F.3d 951, 953–54 (6th Cir. 2021) (stating that § 1B1.13 "no longer provides an *independent* basis for denying compassionate release" and remanding the case because the district court had "relied on § 1B1.13(2) as the *sole* basis for denying [the defendant's] compassionate release," at the exclusion of § 3553(a)'s factors (emphasis added) (citation omitted))); *United States v. Carr*, No. 20-5784, at 3 (6th Cir. Oct. 26, 2020) (PACER) (concluding that "the district court did not err by considering the Sentencing Commission's statement defining 'extraordinary and compelling reasons' when deciding whether [the defendant's] circumstances warranted compassionate release" because the district court merely "treated the policy statement as 'helpful guidance'" (quotation and citation omitted)); *but see United States v. Mullins*, No. 20-5848, at *2–3 (6th Cir. Jan. 8, 2021) (PACER) (vacating this Court's order, which the Court had entered prior to the Sixth Circuit's decision in *Jones*, and remanding the case so that the Court could "recognize its discretion to find extraordinary and compelling reasons other than those listed [in § 1B1.13]").

  Even so, the Court will abstain from an analysis under Application Note 1(A)–(C)—outmoded as it is—and exercise its discretion in determining whether Mr. Altiery has identified an extraordinary and compelling reason for his release. He argues that four extraordinary and compelling reasons warrant his release. First, he asserts that his rehabilitative efforts are an extraordinary and compelling reason for his release. [Def.'s Mot. at 6–13]. Second, he argues

7

that his "family circumstances" are an extraordinary and compelling reason for his release. [*Id.* at 13–17]. Third, he contends that he has underlying medical conditions that place him at an increased risk of severe illness if he were to contract COVID-19. [*Id.* at 17–18]. And fourth, he argues that, under the Sixth Circuit's decision in *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019), he "would no longer wear the career offender label" and "[t]his too constitutes an extraordinary and compelling reason" for his release. [*Id.* at 6].

1. *Rehabilitative Efforts*

During the COVID-19 pandemic, the Court has ruled on dozens if not hundreds of motions for compassionate release under § 3582(c)(1)(a), and in its discretion, its practice has been to address a defendant's rehabilitative efforts not when determining whether extraordinary and compelling reasons exist but when analyzing § 3553(a)'s factors—a leg of the analysis that, if necessary, comes later. *See Jones* 980 F.3d at 1101 ("[D]istrict courts must 'find' both that 'extraordinary and compelling reasons warrant [a sentence] reduction' and that 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission' *before* considering all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." (footnote omitted) (emphasis added))). The Court will adhere to its customary practice and consider Mr. Altiery's rehabilitative efforts when conducting its analysis of § 3553(a)'s factors. *See Ruffin*, 978 F.3d at 1009 ("[T]he court reasonably concluded that [the defendant's] rehabilitation efforts, *when considered alongside the other § 3553(a) factors*, did not warrant any greater reduction of his already below-guidelines sentence." (emphasis added)); *United States v. Hayes*, No. 3:16-CR-01, 2021 WL 932021, at *3 (E.D. Tenn. Mar. 11, 2021) ("[T]his Court considers disciplinary records and rehabilitative efforts to be highly relevant to a discussion of the 3553(a) factors[.]"); *United States v. Young*, 458 F. Supp. 3d 838, 849 (M.D. Tenn. 2020) ("[T]he question of rehabilitation is more appropriately considered . . . under § 3553[.]").

8

### 2. Familial Circumstances

After the Sixth Circuit's decision in *Jones*, district courts in this circuit have capably fashioned their own approaches to defining "extraordinary and compelling circumstances" without consulting § 1B1.13. *See, e.g.*, *United States v. Howell*, No. 1:19-cr-242, 2020 WL 6876124, at *1 (N.D. Ohio, Nov. 23, 2020) (considering whether "(1) the defendant is at high risk of having grave complications should he contract COVID-19" and "(2) the prison where the defendant resides has a severe COVID-19 outbreak" (citations omitted)); *United States v. Black*, No. 17-20656, 2020 WL 7021696, at *3 (E.D. Mich. Nov. 30, 2020) ("Post-*Jones*, these remain appropriate considerations."). But some district courts continue to lean on § 1B1.13(1)(C) when defining "extraordinary and compelling circumstances" in the context of familial hardship. *See, e.g.*, *United States v. Taylor*, No. 19-20056, 2021 WL 21760, at *2 (E.D. Mich. Jan. 24, 2021) ("Although the Sixth Circuit held that U.S.S.G 1B1.13 does not apply to compassionate release motions filed by imprisoned individuals, it remains a measure by which district courts can evaluate what constitutes extraordinary and compelling circumstances." (citation omitted)); *United States v. Rice*, No. 7:15-019-DCR, 2021 WL 141690, at *2–3 (E.D. Ky. Jan. 14, 2021) ("While the policy statement found in U.S.S.G. § 1B.13 of the Sentencing Guidelines is not binding, it provides a helpful starting point for deciding whether extraordinary and compelling reasons exist.").

In *Jones*' wake, a district court's reliance on § 1B1.13(1)(C) appears to be permissible so long as it does not rely on it exclusively—or, in other words, so long as it does not rely on § 1B1.13(1)(C) at the exclusion of an analysis under § 3553(a)'s factors. *See Sherwood*, 986 F.3d at 953–54 (stating that § 1B1.13 "no longer provides an *independent* basis for denying compassionate release" and remanding the case because the district court "relied on § 1B1.13(2)

as the *sole* basis for denying [the defendant's] compassionate release," at the exclusion of § 3553(a)'s factors (emphasis added) (citation omitted))). Both the United States and FDS invite the Court to consider § 1B1.13 in its analysis. *See* [United States' Resp. at 5 ("The application note also identifies other conditions and characteristics as 'extraordinary and compelling reasons' based on the defendant's age or family circumstances" and "remains 'relevant, even if no longer binding.'" (quoting USSG § 1B1.13, cmt. n.1(B)-(C); *United States v. Tomes*, 990 F.3d 500, 503 n.1 (6th Cir. 2021)))]; [Def.'s Mot. at 13 ("Section 1B1.13 provides considerations of Family Circumstances as a basis for establishing 'extraordinary and compelling' reasons.")].

Again, § 1B1.13(1)(C)(i) provides that the "incapacitation of the caregiver of the defendant's minor child" is an extraordinary or compelling circumstance for the defendant's release. Under § 1B1.13(1)(C)(i), Mr. Altiery argues that he qualifies for compassionate release because his minor daughter's lone caregiver—his former girlfriend, Sarah Watts—is now in prison. [Def.'s Mot. at 14]. But as the United States points out, Mr. Altiery does "not know [his daughter's] current whereabouts," [*id.*], so the Court is at a loss to understand how Mr. Altiery, even if the Court were to order his release, could conceivably fill Ms. Watts' place by acting as a caregiver for his daughter. Although Mr. Altiery is "concerned [his] daughter has been placed in foster care," [*id.*], he cites no legal basis from which the Court can find that the placement of his daughter in foster care is an extraordinary and compelling reason for his release, *see United States v. Montgomery*, No. 5: 17-082-DCR, 2020 WL 6491653, at *2 (E.D. Ky. Nov. 4, 2020) ("[E]ven if permanent foster care is a possibility, it is unclear whether placement of a child in foster care could be considered an extraordinary and compelling reason. The application notes reference 'death or incapacitation' of a caregiver." (quoting USSG § 1B1.13 n.1(C)(i))); Bureau of Prisons, *Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18*

10

*U.S.C. §§ 3582 and 4205g* 10 (2019), *available at* https://www.bop.gov/policy/progstat/5050 _050_EN.pdfBOP (defining "incapacitation" to mean that a person has (1) "[s]uffered a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse or registered partner is completely disabled, meaning that the spouse or registered partner cannot carry on any self-care and is totally confined to a bed or chair" or (2) "[a] severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the spouse's or registered partner's mental capacity or function), but may not be confined to a bed or chair."). Mr. Altiery therefore fails to establish that his familial circumstances constitute an extraordinary and compelling reason for his release.

   3. *Underlying Medical Conditions*

Next, Mr. Altiery, who is fifty-two years old, argues that his underlying medical conditions—hypertension and asthma—constitute an extraordinary and compelling reason for his release. [Def.'s Mot. at 17–18]. The United States argues otherwise, citing the fact that Mr. Altiery is fully vaccinated. [United States' Resp. at 17–18]; *see* [Def.'s Med. Records, Doc. 158, at 28]. Because Mr. Altiery is fully inoculated with Pfizer's vaccine, the Court agrees that he is no longer at heightened risk of severe illness from COVID-19 and that his underlying medical conditions therefore do not constitute an extraordinary and compelling reason for his release. *See United States v. Lemons*, ___ F.4th ___, 2021 WL 4699249, at *3 (6th Cir. 2021) ("And following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced. . . . [A] defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction." (citation omitted)); *see also United States v. Traylor*, ___ F.4th ___, 2021

11

WL 5045703, at *1 (6th Cir. 2021) ("Accepting the serious nature of [the defendant's] alleged medical conditions, her argument is foreclosed by our recent holding that 'a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an "extraordinary and compelling reason" warranting a sentence reduction.'" (quoting *id.*)).[1]

  4. United States v. Havis

USSG § 4B1.1(b) contains a career-offender enhancement that increases a defendant's offense level under the Sentencing Guidelines and automatically results in a criminal history category of VI. USSG § 4B1.1(b). Under § 4B1.1(b), a defendant qualifies as a career offender when he "has more than one prior conviction for either crimes of violence or controlled-substance offenses." *United States v. Garth*, 965 F.3d 493, 495 (6th Cir. 2020) (citing USSG § 4B1.1). Section 4B1.2(a) defines a "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year" that "has as an element the use, attempted use, or threatened use of physical force against the person of another." This definition includes robbery. *Id.* In Mr. Altiery's case, he had a prior conviction for armed robbery and a prior conviction for racketeering,[2] each of which was a predicate offense for his career-offender designation. [PSR ¶¶ 36, 38, 40, 42]. The Court therefore applied § 4B1.1(b)'s career-offender enhancement to Mr. Altiery at sentencing. [Statement of Reasons at 1 (adopting the PSR without change)]. Mr. Altiery now invokes *Havis* to request relief from his career-offender status and, ultimately, relief from his custodial sentence. In response, the United States argues that *Havis*

---

[1] Although Mr. Altiery also argues that "[l]eaving [him] in USP Lee, Virginia, would put him at great danger of contracting COVID-19," [Def.'s Mot. at 17], USP Lee currently has no active cases of COVID-19 among its inmates, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last updated Nov. 17, 2021).
[2] According to the PSR, Mr. Altiery's racketeering offense involved "robbing not only check-cashing stores, but other businesses such as jewelry stores, grocery stores, travel agencies, insurance agencies, and a driving school." [PSR ¶ 38].

12

cannot avail Mr. Altiery because it is not retroactive. [United States' Resp. at 6–7]. Mr. Altiery, however, claims that "[b]ecause *Havis* is a case of statutory interpretation, it describes what the law is and always was" and is therefore retroactive. [Def.'s Mot. at 4].

But the Sixth Circuit has stated that *Havis* is not retroactive. *See Bullard v. United States*, 937 F.3d 654, 657, 661 (6th Cir. 2019) ("*Havis* provides no relief on collateral review."); *see also Alexander v. United States*, No. 19-4005, 2020 WL 6111201, at *2 (6th Cir. June 30, 2020) ("[O]ur decision in *Havis* is not a new rule of constitutional law that the Supreme Court has made retroactive."). In addition, Mr. Altiery cites no case in which the Supreme Court has held that *Havis* is retroactive. *See Tyler v. Cain*, 533 U.S. 656, 663 (2001) ("[A] new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive." (footnote omitted)); *Chapman v. Terris*, No. 19-11247, 2019 WL 5733708, at *2 (E.D. Mich. Nov. 5, 2019) ("[T]he Sixth Circuit's decision in *Havis* is not a Supreme Court case involving a retroactive change in statutory interpretation." (citation omitted)); *Goddard v. United States*, No. 0:19-067-HRW, 2019 WL 3290118, at *3 (E.D. Ky. July 22, 2019) ("[The defendant] relies on the Sixth Circuit's recent en banc decision in *Havis* which is, of course, not a Supreme Court decision.").

As the United States points out, the Sixth Circuit recently declared that "non-retroactive changes in the law, whether alone or in combination with other personal factors, are not 'extraordinary and compelling reasons' for a sentence reduction." *United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021). Although the Sixth Circuit has stated that district courts can consider non-retroactive "sentencing law changes" when conducting an analysis of § 3553(a)'s factors, a defendant must *first* "show some other 'extraordinary and compelling' reason for a sentencing reduction." *United States v. Jarvis*, 999 F.3d 442, 445 (6th Cir. 2021). Mr. Altiery

13

has not identified any other extraordinary and compelling reason for his release, and he wrongly argues that *Havis* is a freestanding basis by which the Court can find that an extraordinary and compelling reason exists for his release. *See* [Def.'s Mot. at 6 (asserting that, because of *Havis*, "Mr. Altiery would no longer wear the career offender label" and "[t]his too constitutes an extraordinary and compelling reason" for his release)].

But even if Mr. Altiery had identified an extraordinary and compelling reason for his release under § 3582(c)(1)(A), he still would not be entitled to release because he has not shown that § 3553(a)'s factors weigh in favor of it. *See Ruffin*, 978 F.3d at 1008 ("We have repeatedly recognized that district courts may deny relief under the § 3553(a) factors even if 'extraordinary and compelling' reasons would otherwise justify relief." (citations omitted)); *see also Sherwood*, 986 F.3d at 954 (stating that "[the defendant] must make a compelling case as to why the sentencing court's § 3553(a) analysis would be different if conducted today" (citation omitted)).

### B. The Third Requirement: Applicable Factors under § 3553(a)

The Court considered § 3553(a)'s factors "in some depth at the original sentencing," *United States v. Curry*, 606 F.3d 323, 331 (6th Cir. 2010), so it has no obligation to readdress all of those factors now, *see* 18 U.S.C. § 3582(c)(1)(A) (requiring district courts to consider § 3553(a)'s factors "to the extent that they are applicable"); *cf. United States v. Jones*, 407 F. App'x 22, 25 (6th Cir. 2011) (stating that in *Curry* "we held that the district court did not abuse its discretion even though it had not expressly considered all of the § 3553(a) factors" because "§ 3582(c)(2) proceedings 'do not constitute a full resentencing of the defendant' and do not require the same procedural formalities as plenary sentencings" (quoting *Curry*, 606 F.3d at 330–31)); *see also Jones*, 980 F.3d at 1114 (stating that "[d]istrict courts should consider all *relevant* § 3553(a) factors before rendering a compassionate release decision" (emphasis added)

14

(citing *Gall v. United States*, 552 U.S. 38, 49–50 (2007))). "[A]s long as the record *as a whole* demonstrates that the pertinent factors were taken into account," the Court's analysis will be adequate. *Jones*, 980 F.3d at 1114 (quotation omitted).

In Mr. Altiery's case, the factors that the Court will address include § 3553(a)(1), (2), and (4):

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> . . . .
>
> (4) the kinds of sentence and the sentencing range established for—
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

18 U.S.C. § 3553(a)(1)–(2), (4). As for the nature and circumstances of Ms. Altiery's offenses, he conspired to distribute and possess with the intent to distribute both oxycodone and heroin—serious offenses. *See United States v. Dilg*, 726 F. App'x 368, 371 (6th Cir. 2018) ("We have categorically labeled drug offenses as serious." (citing *United States v. Moss*, 217 F.3d 426, w\431 (6th Cir. 2000))); *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) ("[D]rug trafficking is a serious offense[.]" (citations omitted)); *United States v. Suber*, 75 F. App'x 442, 444 (6th Cir. 2003) (describing a conspiracy to distribute heroin as "grave"). In addition, Mr. Altiery admittedly conspired to distribute 200 grams of heroin, a large quantity. [Plea Agreement at 4]; *see United States v. Castro*, 960 F.3d 857, 865 (6th Cir. 2020) (stating that a hundred

15

grams of heroin is a "large quantit[y] of drugs"); *cf. United States v. Farmer*, No. 95-6637, 1996 WL 694147, at *4 (6th Cir. Dec. 3, 1996) (describing 150 grams of cocaine base as "a large quantity of narcotics").

Also, the Court has refamiliarized itself with Mr. Altiery's presentence investigation report and his history and characteristics and is of the conviction that he would pose a danger to the public if it were to order his release. At sentencing, his criminal history category was VI, the highest possible category. His adult criminal history began at the age of twenty-three, and he has spent most of his adult life in prison partly because of his inordinately violent criminal history. His convictions include the aforementioned crimes of armed robbery, during which he assaulted two women with a handgun, and racketeering, during which he committed "no fewer than 27 armed robberies in several states," acted as a gunman, and even sustained a gunshot wound. [PSR ¶¶ 36, 38].[3] After he recovered, he resumed his crime spree. [*Id.* ¶ 38]. "During most of the robberies the gunmen ordered victims to lie down at gun point, handcuffed victims to furniture, bound the victims with duct tape, or placed a firearm to their head." [*Id.*]. He also received two criminal history points under USSG § 4A1.1(d) because he committed the current offenses— i.e., conspiracies to distribute and possess with the intent to distribute oxycodone and heroin— while serving a federal sentence. [*Id.* ¶ 40]. A sentence reduction therefore would not reflect the seriousness of Mr. Altiery's offense and adequately protect the public from future crimes.

Before concluding its analysis, the Court must address one further point: Mr. Altiery's post-conviction record, which he mentions in his motion. [Def.'s Mot. at 6–13]. He states that

---

[3] As a general matter, when a defendant does not "produce some evidence that calls the reliability or correctness of the alleged facts [in the PSR] into question," a district court "may rely entirely on the PSR." *United States v. Lang*, 333 F.3d 678, 681 (6th Cir. 2003) (quotation omitted); *see United States v. Roark*, 403 F. App'x 1, 4 n.2 (6th Cir. 2010) ("[T]he PSR *is* evidence, at least in the sense that it may be considered at sentencing." (citing *United States v. Silverman*, 976 F.2d 1502, 1511 (6th Cir. 1992))).

he has incurred no post-conviction disciplinary infractions while serving his sentence. [*Id.* at 13]. He also states that he has used his time to his advantage by completing numerous courses. [*Id.* at 20]. All of this is to Mr. Altiery's credit, and the Court applauds his accomplishments and efforts—they will serve him well in the future. But good behavior is expected of federal inmates. *See United States v. Martin*, No. 6:06-105-DCR, 2021 WL 134602, at *2 (E.D. Ky. Jan. 13, 2021) ("These admirable efforts will likely serve [the defendant] both now and well after his term of incarceration ends. But good behavior and education, which are expected of incarcerated individuals, do not constitute 'extraordinary and compelling circumstances' that warrant a sentence reduction."); *United States v. Logan*, No. 97-cr-993, 2021 WL 1221481, at *8 (D. Minn. Apr. 1, 2021) ("Prisoners are *supposed* to follow the rules, take classes, work at a job, and otherwise attempt to improve themselves. That a prisoner does so means that he has met baseline expectations, not that he has done something extraordinary."); *cf. United States v. McKay*, 352 F. Supp. 2d 359, 361 (E.D.N.Y. 2005) (stating that a defendant's re-assimilation into pre-incarceration life is "commendable," but it is "expected of a person on supervised release and do[es] not constitute the 'exceptional behavior' contemplated in the precedents").

A defendant's rehabilitative efforts alone, therefore, are insufficient to justify his release under § 3582(c)(1)(A). *See* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."); *Ruffin*, 978 F.3d at 1009 ("Congress has made clear that rehabilitation 'alone' does not provide a proper basis for relief."). Because the applicable factors that the Court has analyzed under § 3553(a) work against Mr. Altiery's release, his rehabilitative efforts cannot act as a ballast that outweighs those factors, especially given his below-guidelines sentence. *See Ruffin*, 978 F.3d at 1009 ("All told, then, the court reasonably concluded that [the defendant's] rehabilitation efforts, when considered alongside

17

the other § 3553(a) factors, did not warrant any greater reduction of his already below-guidelines sentence. (citing 28 U.S.C. § 994(t))); *see also United States v. Gaston*, 835 F. App'x 852, 855 (6th Cir. 2020) ("[The defendant] points to no evidence other than his rehabilitation that might favor relief. Therefore, *Ruffin* forecloses remand on this argument."). In sum, Mr. Altiery fails to demonstrate that § 3553(a)'s factors warrant his release.

### III. Conclusion

While the Court sympathizes with Mr. Altiery's concerns, he is not entitled to compassionate release under § 3582(c)(1)(A) because he has not identified an extraordinary and compelling reason for his release and the relevant factors under § 3553(a) militate against his release. His Renewed Motion for Compassionate Release [Doc. 155] is therefore **DENIED**.

So ordered.

ENTER:

s/J. RONNIE GREER  
UNITED STATES DISTRICT JUDGE